# UNSWORN DECLARATION UNDER PENALTY OF PERJURY
## Title 28 United States Code 1746

I, Manuel Figueroa-Lopez, U.S. Postal Inspector with the United States Postal Inspection Service (USPIS), hereby declare as follows:

## PROFESSIONAL BACKGROUND

I am a Postal Inspector with the United States Postal Inspection Service (USPIS), currently assigned to the Miami Division, San Juan Field Office, located in Guaynabo, Puerto Rico, and have so been employed since September 2024. I have attended various training academies and courses. Specifically, I have attended the Criminal Investigator Training Program and the Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, GA. During this training, I received instruction on federal laws, interviewing techniques, search and seizure techniques, arrest procedures, evidence collection techniques, digital forensics training, and other subjects relating to criminal investigations. I also have had additional training and experience with other U.S. Postal Inspectors and federal and local law enforcement agents in connection with the investigation of the use of the U.S. Mail or in connection with the U.S. Postal Service ("USPS"), property of the USPS, and other postal offenses, as set forth in, 18 U.S.C. § 3061. As such, I am an "investigative or law enforcement officer" within the meaning of, 18 U.S.C, § 2510(7). That is, I am an officer of the United States who is empowered by law to conduct investigations and to make arrests for crimes furthered through the use of the U.S. Mail or in connection with the U.S. Postal Service.

I am currently assigned to the San Juan Prohibited Mail Team and am primarily responsible for investigations involving the illegal use of the U.S. Mail in the trafficking of narcotics and firearms. As a result, I have conducted numerous firearms and narcotics investigations involving the transportation of firearms and controlled substances; as well as those involving proceeds derived from the distribution of firearms and controlled substances via the mail, in violation of 18 U.S.C. §§ 922 (a) (1) (a) & (a)(3), and 1715, and 21 U.S.C. §§ 841 (a)(1), 843(b), and 846. As a Postal Inspector, I have also worked on several investigations involving the use of the U.S. Mail and the Postal Service to launder and smuggle currency derived from specified unlawful activities, including narcotics distribution, in violation of 18 U.S.C. §§ 981, 982, 1956, and 1957, and 31, U. S.C. § 5325. Additionally, I have also participated in several interdiction operations targeting parcels containing illegal firearms, narcotics, and proceeds thereof, both in San Juan and elsewhere in the continental United States. While conducting investigations related to the mailing of firearms, narcotics, and currency, I have had the opportunity to become familiar with known trafficking sources and destination areas, various smuggling methods and techniques used by traffickers, as well as the manner in which traffickers' package illicit firearms, narcotics, and related proceeds.

This Unsworn Declaration is submitted in support of a verified complaint of forfeiture, which involves the offenses detailed in Section 881(a)(6) of 21 U.S.C, particularly all moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for controlled

2

substance or listed chemicals, in violation of the subchapter, all proceeds traceable to such an exchange and all moneys, negotiable instruments and securities used or intended to be used to facilitate any violation of, 21 U.S.C.

Because this declaration is submitted for a limited purpose, the undersigned has not included details of every aspect of this investigation. The facts and information contained in this unsworn declaration are based on my personal knowledge as well as observations of other Postal Inspectors involved in this investigation. All observations that were not personally made by me were relayed to me by other law enforcement officers as a result of my personal participation in the investigation of Cecilia Cepeda and others; through information obtained from other law enforcement agencies, witnesses and reliable sources, I am familiar with the facts and circumstances of the offenses described in the "Facts" section of this unsworn declaration.

Unless otherwise noted, whenever in this unsworn declaration I assert that a statement was made, the information was provided by another law enforcement officer, to whom I have spoken or whose report I have read and reviewed.

Likewise, information resulting from the parcel interdiction and investigation, except where otherwise indicated, does not set forth my observations, but rather has been provided, directly or indirectly, through other law enforcement officers that conducted the interdiction.

## PROPERTY TO BE FORFEITED
### $23,300.00 In U.S. Currency

## INVESTIGATIVE BASIS

Based on my training and experience I have learned that:

1. The U.S. Mail is often used by narcotic traffickers to transport controlled substances, as well as U.S. currency derived from, or involved in, the distribution of controlled substances, either as payment or proceeds.

2. The drug traffickers know that both Priority Mail Express, and Priority Mail, are considered First Class Mail and are therefore protected against inspection without a Federal Search Warrant.

3. That drug traffickers discern that by using Priority Mail Express and Priority Mail with Delivery Confirmation, they can track the parcels, control dispatch times and locations, and most importantly, have a guarantee of delivery in one or two business days. Moreover, traffickers also know that any delay in a Priority Mail Express parcel delivery could represent that such parcel has been intercepted by law enforcement.

4. That law enforcement agencies have established, based upon years of experience in narcotics investigations, that the city of Buffalo, New York, frequently receives controlled substances sent via the U.S. Mail from Puerto Rico. Furthermore, Puerto Rico is a known destination for the returning proceeds or payments of such narcotics from Buffalo.

5. That, in addition to the aforementioned, it is customary for narcotics traffickers to hand write the labels attached to the mail piece instead of using a pre-printed label. Pre-printed labels are customary with most legitimate businesses utilizing

4

the Priority Mail Express service.

6. That individuals who regularly handle controlled substances often leave the scent of controlled substances on the box, packaging materials, and U.S. currency they handle, and that packaging materials are often stored in close proximity to the controlled substances, transferring the odor to the packaging materials.

7. That narcotic canine, also known as K-9, are trained to alert to the smell of various chemicals present in illegal narcotic drugs, such as methyl benzoate, a chemical present in cocaine.

8. That USPIS Inspectors know from training and experience that individuals who traffic in controlled substances rarely include any type of instruction with the proceeds, unlike legitimate businesses or gifts whose note, letter, receipt, or coupon is included with the cash or monetary instruments.

9. Postal Inspectors have found, in most cases, narcotics payments have been primarily in twenty-dollar denominations.

## FACTS

10. On May 12, 2025, at the USPS Mail Processing Annex located in Carolina, Puerto Rico, Priority Mail Express parcel 9505 5141 2591 5125 9997 60 addressed to Cecilia Cepeda, with an address in Loiza, Puerto Rico, with a return address of Liamarie Santana, with an address in Buffalo, New York, was identified by Postal Inspectors as meeting the initial suspicious characteristics of a narcotics mailing. A search on law enforcement databases identified a

Cecilia Cepeda as a 72-year-old female from Loiza, PR. The subject parcel was a USPS Priority Mail Express box parcel, had a handwritten label, weighed approximately three (3) pounds and fourteen (14) ounces. The parcel had affixed to it, U.S. Postage Meter, S2324K505290-23, with a postage amount of $19.15, the meter was from zip code 14213 dated May 5, 2025.

11. On May 12, 2025, at the USPS Mail Processing Annex (MPA) located in Carolina, Puerto Rico, the parcel was placed for exterior examination by a narcotics detection canine from the Puerto Rico Police Department. According to the officer who handled the canine, "Herry" exhibited a change of behavior consistent with the presence of various odors of controlled substances.

12. On May 15, 2025 Federal Search Warrant 25-482(M), dated May 14, 2025, was executed on Express Mail parcel 9505 5141 2591 5125 9997 60. The parcel opened and found inside were a white T-shirt, and one (1) bundle wrapped with bubble wrap. Underneath the bubble wrap was one (1) color collect & squish toy box. Inside the color collect & squish toy box were paper bag, T-shirt, coloring markers, and one (1) Express Mail envelope wrapped in clear plastic. Inside the Express Mail envelope wrapped in clear plastic were four (4) bundles wrapped in clear plastic, and carbon paper. Underneath the clear plastic, and carbon paper was U.S. Currency in $20, $50 and $100 denominations. The total amount recovered in this parcel was $23,300.00.

13. On May 16, 2025, the return name and address written on the label of the subject parcel were searched in a law enforcement database, which maintains

6

names, Social Security numbers and the last known addresses and Zip Code information. The return address in Buffalo New York, does appear in the database. Liamarie Santana was not found associated with the address. The name found associated with the address was Juan L. Figueroa. On May 30, 2025, Carrier Supervisor confirmed Liamarie Santana is not a mail recipient at that address.

14. On May 17, 2025, an address verification was received from the USPS Loiza Main Post Office. According to PS Form 1093, the recipient address in Loiza Puerto Rico, is recognized by the U.S. Postal Service as a deliverable address. Cecilia Cepeda is listed as mail recipient and the only one authorized to receive mail at the address.

15. Probable Cause Verification was approved by the U.S. Postal Inspection Service Legal Counsel on June 20, 2025.

16. Notices were sent to all interested parties on June 27, 2025. On July 7, 2025, Internet advertisement information was posted on the forfeiture.gov website for 30 consecutive days.

17. On July 11, 2025, a Claim for $23,300.00 in U.S. currency, was received from Cecilia Cepeda, via Standard Online Claim Form, from an email address.

18. On July 15, 2025, an email requesting additional information was sent to Cecilia Cepeda. The following information was requested:

   a. Provide a copy of your bank statements for the last year, which indicate the withdrawal and/or deposits of the seized amount, or evidence of the

      origination of the cash.

   b. Provide any proof of employment and / or evidence of income. Please, include the name and contact phone number of your manager/supervisor.

   c. Copy of the latest tax filling statements (State and Federal) and a copy of a valid government identification.

   d. Explain the reason why cash was sent via mail instead of a financial instrument such as a personal check, business check, manager's check, or money orders. Provide a description of the box used for the mailing and all the contents; explain the concealment method used.

   e. Explain your relationship with Liamarie Santana.

   f. Provide any other information or documents that supports your claim.

19. The letter stated a term of 10 days to provide such information.

20. As of today, our office has not received from the claimant any information supporting the claim.

21. Another discrepancy noticed is that the sender address of the package is not the same as the one provided by Cecilia Cepeda per her Claim in Orlando, Florida.

22. Based on the facts (1) of the suspicious manner in which the defendant money was transferred, not wired, not sent by check, but rather sent in cash, uninsured, overnight by Priority Mail Express shipment which was paid for in cash; (2) of the amount of cash involved, $23,300.00; (3) the method of concealment found inside the parcel; (4) a trained narcotics canine alerted positive on the package;

(5) no documents or evidence of the legitimacy of the seized U.S. Currency have been submitted by the claimant; and (6) the Social Security Number, XXX-XX-3265, provided by claimant Cecilia Cepeda in her claim, was searched in a Law Enforcement database and revealed to belong to a male deceased in May of 1980; the undersigned believes that the $23,300.00 in US Currency seized from Cecilia Cepeda constitutes proceeds derived from the illegal sale of narcotics in violation of 21 U.S.C §§ 881(a)(6); 841 (a)(1); 843(b); and 846.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief, pursuant to 28 U.S.C, § 1746.

In San Juan, Puerto Rico, this __6__ day of __October__, 2025.

MANUEL FIGUEROA-LOPEZ
Digitally signed by MANUEL FIGUEROA-LOPEZ
Date: 2025.10.06 16:40:40 -04'00'

Manuel Figueroa-Lopez, Postal Inspector
United States Postal Inspection Service (USPIS)